**FILED**

**JULY 17, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES H. BUDDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1165 |
| v. | ) | Honorable Rebecca R. Pallmeyer, Presiding |
| | ) | |
| | ) | U.S. Magistrate Maria Valdez |
| KANE COUNTY FOREST PRESERVE, | ) | <u>Jury Trial Demanded</u> |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES í í í í í í í í í í í í í .í í í í í í í í iii

STANDARD OF REVIEWí í í í í í í í í í í í í í í í í í í í .í 1

I.     Budde is disabled under the ADAí í í í í í í í í í í í í í í ...í 1

    A.    There is No Dispute that Budde suffers from the
recognized ADA disability of alcoholismí í í í í í í í í í í í 1

    B.    Contrary to defendantøs contention, the undisputed facts
demonstrate that several of Buddeøs major life activities
were affected by his alcoholism...í í í í í í í í í í í í í í 2

        1.    Questions posed to Dr, Hess was limited to Buddeøs
post-treatment condition and therefore is an inaccurate
measure of effect on major life activitiesí í í í í í í í í 3

        2.    Defendants focus on major life activities of working
and other physical tasks ignores evidence regarding
the affect of Buddeøs alcoholism on other major life
activities such as caring for himself, his social and
family relationships and his concentrationí í í í í í í í ..4

    C.    Defendant perceived Budde to be disabled under the ADAí í í í í í 6

    D.    Budde can perform the essential functions of his jobí í í í í ..............8

        1.    Budde was able to perform the only essential job
function related to õdriving a carö listed in the applicable
job description for Chief of Police ó that
is õoperate a motor vehicle.öí í í í í í í í í í í í í í 8

        2.    The undisputed facts demonstrate driving a car
to and from work or in response to calls were
not essential functions of the job of chief of policeí í í ...í 10

    E.    Defendant cannot show as a matter of undisputed fact
that Budde was not terminated because of his alcoholism
rather than for the DUIí í í í í í í í í í í í í í í í í í ...11

II.     Summary judgment should be denied on Budde's ADA discrimination claim….13

        A.      Budde has set forth evidence of discrimination under the
                indirect burden shifting method of proof… í í í í í í í í í …13

        B.      Budde has also set forth direct evidence of discrimination… í í í í …14

III.    Summary judgment should be denied on the ADA accommodation claim… …í 15

        A.      Accommodation is required for both actual and perceived
                disabilities.í í í í í ….í í í í í í í í í í í í í í í í .15

        B.      The District refused to provide Budde with a reasonable
                accommodation. í í í í í ….í í í í í í í í í í í í í í 17

IV.     Summary judgment should be denied on the ADA retaliatory
        discharge claim… í í í í í í í í í í í í í í í í í í í í í í í í ..19

        A.      Seeking an accommodation is a statutorily protected activity…í í í í 19

        B.      Budde's termination is an adverse employment action. í í í í í í …19

        C.      Defendant's termination of Budde was connected to his
                request for an accommodation. í í í í í .í í í í í í ….í í í í 20

CONCLUSION… í í í í í í í í í í í í í í í í í í ….í í í í í í í í ..21

# **TABLE OF AUTHORITIES**

Cases                                                                                                          Page(s)

*Aguilera v Cook County Police & Corrs. Merit Bd.*,
760 F.2d 844 (7th Cir. 1985) í ..í í í í í í í í í í í í í í í ...........í í í í ...10

*Basith v. Cook County*,
241 F.3d 919 (7th Cir. 2001) í ..í í í í í í í í ............................................................10

*Battle v. United Parcel Serv., Inc.*,
438 F.3d 856 (8th Cir. 2006) í ..í í í í í í í í í ..........................................................4

*Beck v. University Bd. Of Regents*,
75 F.3d 1130 (7th Cir. 1996) í ..í í í í í í í í í ....................................................15, 18

*Bennington v. Caterpillar Inc.*,
275 F.3d 654 (7th Cir. 2001) í ..í í í í í í í í í ......................................................1, 11

*Bilodeau v. Mega Indus.*,
50 F. Supp. 2d 27 (D.ME. 1999) í ..í í í í í í í í í í ..........................................................6

*Burch v. Coca-Cola Co*,
119 F.3d 305 (5th Cir. 1997) í ..í í í í í í í í í ..............................................................3

*Cigan v. Chippewa Falls Sch. Dist.*,
388 F.3d 331 (7th Cir. 2004) í ..í í í í í í í í í ...........................................................16

*D'Angelo v. Conagra Foods, Inc.*,
422 F.3d 1220 (11th Cir. 2005) í ..í í í í í í í í í .......................................................16

*DePaoli v. Abbott Labs.*,
140 F.3d 668 (7th Cir. 1998) í ..í í í í í í í í í í ....................................................11, 17

*DeSpears v. Milwaukee County*,
65 F.3d 635 (7th Cir. 1995) í ..í í í í í í í í í ...............................................2, 11, 12, 13

*Dey v. Colt Const. & Development Co.*,
28 F.3d 1446 (7th Cir. 1994) í ..í í í í í í í í í .........................................................20

*Cline v. Wal-Mart Stores, Inc.*,
144 F.3d 294 (4th Cir. 1998) í ..í í í í í í í í í í í í í í í í í ...........í í í í .í í í ...7

*Emerson v. Northern States Power Co.*,
256 F.3d 506 (7th Cir. 2001) .............................................................................4

*Foster v. Arthur Andersen, LLP*,
168 F.3d 1029 (7th Cir. 1999) ..................................................................13

*Freadman v. Metropolitan Property and Cas. Ins. Co.*,
484 F.3d 91 (1st Cir. 2007) ......................................................................19

*Gagliardo v. Connaught Laboratories, Inc.*,
311 F.3d 565 (3rd Cir. 2002) .............................................................................4

*Harter v. University of Indianapolis*,
5 F. Supp. 2d 657 (S.D. Ind. 1998) ........................................................17

*Haschmann v. Time Warner Entm't Co.*,
151 F.3d 591 (7th Cir. 1998) ...................................................................18

*Haywood v. Lucent Technologies, Inc.*,
323 F.3d 524 (7th Cir. 2003) ...................................................................19

*Head v. Glacier Northwest, Inc.*,
413 F.3d 1053 (9th Cir. 2005) ...................................................................4

*Hicks v. Midwest Transit, Inc.*,
500 F.3d 647 (7th Cir. 2007) ......................................................................1

*Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*,
104 F.3d 1004 (7th Cir. 1997) ...................................................................20

*Katz v. City Metal Co., Inc.*,
87 F.3d 26 (1st Cir. 1996) .........................................................................16

*Kelly v. Metallics West, Inc.*,
410 F.3d 670 (10th Cir. 2005) ..........................................................................16

*Luciano v. Olsten Corp.*,
110 F.3d 210 (2nd Cir.1997) .....................................................................13

*McCormack v. Long Island R.R. Co.*,
No. 03 Civ. 6597(JCF), 2006 WL 490032 (S.D.N.Y. Feb. 28, 2006) ..........4

*McKay v. Town and Country Cadillac, Inc.*,
97 C 2102, 2002 WL 1285065 (N.D. Ill. June 7, 2002) .............................4

*Moore v. J.B. Hunt Transp. Inc.*,
221 F.3d 944 (7th Cir. 2000) ...............................................................................7

*Pearson v. University Hospitals of Cleveland*,
No. 1:06 CV 1974, 2008 WL 1808797 (N.D. Ohio Apr. 12, 2008) ............3

*Pernice v. City of Chicago*,
237 F.3d 783 (7th Cir. 2001) .............................................................12

*Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*,
294 F.3d 35 (2nd Cir. 2002) .............................................................4

*Rooney v. Koch Air, LLC*,
410 F.3d 376 (7th Cir. 2005) ...............................................................13

*School Bd. Of Nassau County v. Arline*,
480 U.S. 273 (1987) .........................................................................16

*Sherkow v. Wisconsin*,
630 F.2d 498 (7th Cir.1980) .............................................................13

*Schmidt v. Safeway Inc.*,
864 F. Supp. 991 (D. Or. 1994) .........................................................18

*Silk v. City of Chicago*,
194 F.3d 788 (7th Cir. 1999) .............................................................19

*Simple v. Walgreen Co.*,
511 F.3d 668 (7th Cir. 2007) .............................................................14

*Squibb v. Memorial Med. Ctr.*,
497 F.3d 775 (7th Cir. 2007) .............................................................1

*Sullivan v. Neiman Marcus Group, Inc.*,
358 F.3d 110 (1st Cir. 2004) .............................................................7

*Teahan v. Metro-North Commuter R.R.*,
951 F.2d 511 (2nd Cir.1991) .............................................................2

*Terry v. American Airlines*,
No. 02 C 8829, 2004 WL 2211606 (N.D. Ill. Sept. 3, 2004) ...........6, 7, 15

*Troupe v. May Dept. Stores Co.*,
20 F.3d 734 (7th Cir. 1994) .............................................................20

*US Airways, Inc. v. Barnett*,
535 U.S. 391 (2002) í ..í í í í í í í í í í í í í í í í í í ...........í í í ....15

*Vande Zande,v. State Of Wisconsin, Dept Of Admin.*,
44 F3d 538, 543 (7th Cir. 1995). í í í í í í í í ...............................................................15

*Williams v. Philadelphia Hous. Auth. Police Dep't*,
380 F.3d 751 (3rd Cir. 2004) í ..í í í í í í í í í í í í í í í í í í ...........í í í ...16

*Woods v. City of Chicago*,
234 F.3d 979 (7th Cir. 2000) í ..í í í í í í í í í í í í í í í í í í ...........í í í ...10

*Zakaras v.United Airlines, Inc.,*
121 F. Supp. 2d 1196 (N.D. Ill. 2000) í ..í í í í í í í í í ..................................................7

Statutes

28 C.F.R. § 41.31(b)(2) í ..í í í í í í í í í ...........................................................................4

29 C.F.R. § 1630.2(j) í ..í í í í í í í í í í .....................................................................6, 10

42 U.S.C. §12102(2)(A)-(C) í ..í í í í í í í í í í í í í í í í í í ...........í í í í ..í ...2

42 U.S.C. §12111(10)(A) í ..í í í í í í í í í í í í í í í í í í í í ...........í í í í ....15

Plaintiff, Charles H. Budde, by and through his attorney, submits the following Memorandum in Opposition to Motion for Summary Judgment and, states as follows.

## STANDARD OF REVIEW

A court should grant a motion for summary judgment only when, after reviewing the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, it finds that no genuine issue of material fact exists. *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 651 (7th Cir. 2007). In determining whether there is any genuine issue of material fact, a court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). The non-moving party must produce sufficient evidence in order to support a reasonable jury verdict in its favor; the burden on the moving party is to establish that no genuine issue of material fact exists and that, as a matter of law, it is entitled to summary judgment. *Hicks*, 500 F.3d at 651.

## ARGUMENT

I.      **Budde is disabled under the ADA.**

   A.      **There is No Dispute that Budde suffers from the recognized ADA disability of alcoholism.**

Defendant, Kane County Forest Preserve's ("Defendant" or "District")Motion for Summary Judgment does not dispute that Budde is an alcoholic. Budde has a DSM IV diagnosis of alcohol dependence.[1] Budde's LR56.1(b) Statement of Additional Uncontested Facts (hereinafter "SAUF") ¶9. Alcoholism is a recognized disability under the ADA. *DeSpears v.*

---

[1] The diagnostic criteria for alcohol dependence under the DSM-IV are as follows:
A maladaptive pattern of alcohol use, leading to clinically significant impairment or distress, as manifested by three or more of the following seven criteria, occurring at any time in the same 12-month period:
1.    Tolerance, as defined by either of the following:
    a)    A need for markedly increased amounts of alcohol to achieve intoxication or desired effect.
    b)    Markedly diminished effect with continued use of the same amount of alcohol.
2.    Withdrawal, as defined by either of the following:
    a)    The characteristic withdrawal syndrome for alcohol (refer to DSM-IV for further details).
    b)    Alcohol is taken to relieve or avoid withdrawal symptoms.
3.    Alcohol is often taken in larger amounts or over a longer period than was intended.
4.    There is a persistent desire or there are unsuccessful efforts to cut down or control alcohol use.
5.    A great deal of time is spent in activities necessary to obtain alcohol, use alcohol or recover from its effects.
6.    Important social, occupational, or recreational activities are given up or reduced because of alcohol use.
7.    Alcohol use is continued despite knowledge of having a persistent or recurrent physical or psychological problem that is likely to have been caused or exacerbated by the alcohol (e.g., continued drinking despite recognition that an ulcer was made worse by alcohol consumption).
AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994).

*Milwaukee County*, 65 F.3d 635, 635 (7th Cir. 1995) (citing *Teahan v. Metro-North Commuter R.R.*, 951 F.2d 511, 517 (2nd Cir.1991)).

**B.    Contrary to defendant's contention, the undisputed facts demonstrate that several of Budde's major life activities were affected by his alcoholism**.

Defendant argues that Budde is not a qualified individual with a disability under the ADA because his disability does not affect any of his major life activities. Defendant's LR 56.1(a) Statement of Uncontested Facts (Dkt. No. 80) (hereinafter "SUF") ¶¶19-21; Memorandum of Law in Support of Defendant Kane County Forest Preserve District's Motion for Summary Judgment (hereinafter "MSJ Br."), pp. 5-6. Defendant's arguments are based on two fatal flaws: 1) defendant relies exclusively on statements regarding Budde's condition after rehabilitation for alcoholism rather than the effect of his untreated alcoholism, 2) defendant ignores several categories of major life activities which were affected by Budde's alcoholism, namely his ability to care for himself, his social and family relationships, and his ability to concentrate; and 3) defendant misapplies the standard which requires that an ADA plaintiff's disability substantially limit one or more major life activities. MSJ Br., 5 (citing 42 U.S.C. §12102(2)(A)-(C)). Defendant's support for its contention that Budde's major life activities were not affected relies on 1) the deposition testimony of Dr. Melvin Hess (SUF ¶19); 2) the opinion of Morton McPhail that Budde was qualified to perform other jobs (MSJ Br., p. 6) (SUF ¶20); and testimony of Budde that he could hear, see breathe, perform manual tasks, including housework, bathing or brushing his teeth." MSJ Brief, p. 6; SUF ¶21. Defendants reliance on this testimony is misplaced.

**1.    Questions posed to Dr, Hess was limited to Budde's post-treatment condition and therefore is an inaccurate measure of effect on major life activities.**

Defendant cites to Dr. Hess' testimony (Ex. H to MSJ Br.) in support of the assertion that "there was nothing –in Mr. Budde's presentation [or] history that indicated to [Dr. Hess] that [Budde] was impaired in performing major life activities." SUF ¶19. Defendant, however, relies on a line of questioning directed to Dr. Hess by defense counsel in which defense counsel limited the questions regarding major life activities to "when [Budde] was not actually intoxicated." SAUF ¶10. This argument, however, applies an incorrect standard. The effect of a disability on major life activities under the ADA is to be assessed as to the conditions

"untreated" form. *Burch v. Coca-Cola Co,* 119 F.3d 305, 317 (5th Cir. 1997). In the case of alcoholism, the untreated condition is prior to rehabilitation and may include looking at the effects of alcoholism while Budde was inebriated. *Pearson v. University Hospitals of Cleveland,* No. 1:06 CV 1974, 2008 WL 1808797, at *7 (N.D. Ohio Apr. 12, 2008). In *Pearson,* the Court denied summary judgment because the plaintiff's inebriation that resulted in incapacity 10-20% of the time was sufficient to allow a reasonable jury to conclude that the plaintiff's alcoholism affected his major life activities. *Id.* In this matter, the evidence establishes that, prior to June 1, 2005, his first day of sobriety, Budde drank every evening from the time he came home from work until he passed out in a chair in front of his television. SAUF ¶12. Under the case law, the affect of his alcoholism on major life activities should be assessed at prior to his treatment, which began on June 1, 2005, not based on his condition after his discharge on June 21, 2005, when he was rehabilitated and no longer drinking. *See Burch,* 119 F.3d at 317 (concluding that the issue is – does Plaintiff's "untreated" alcoholism substantially limited any major life activity"). All the questions posed to Hess on which defendant relies were questions concerning Budde's condition post-treatment, not as to Budde's "untreated" alcoholism.

> **2. Defendants focus on major life activities of working and other physical tasks ignores evidence regarding the affect of Budde's alcoholism on other major life activities such as caring for himself, his social and family relationships and his concentration.**

In support of its contention that Budde was not limited as to any major life activity, defendant identifies certain major life activities that Budde admits were not substantially limited, but again ignores evidence that demonstrates that other major life activities were affected. So, while Defendant argues that Budde was not impaired in the life activities of working (SUF ¶20, citing Morton McPhail) and certain physical activities (SUF ¶21, citing Budde), it ignores ADA recognized life activities, such as Budde's ability to care for himself, his social and family relationships, and his ability to concentrate. As set forth, *inter alia,* each of these major life activities was substantially limited when Budde's alcoholism was untreated. Caring for oneself is one of the recognized major life activities set forth in the EEOC regulations interpreting the ADA. 28 C.F.R. § 41.31(b)(2); *McCormack v. Long Island R.R. Co.,* No. 03 Civ. 6597(JCF), 2006 WL 490032, at *8 (S.D.N.Y. Feb. 28, 2006). While the Seventh Circuit has not specifically addressed whether concentration is itself a major life activity (*see Emerson v. Northern States Power Co.,* 256 F.3d 506, 511 (7th Cir. 2001) (not specifically deciding whether plaintiff's

disability affected her concentration, but adopting the district court¢s approach that concentration feeds into the major life activities of working and learning), several other circuit courts have ruled that concentration, cognitive thinking, or learning is a major life activity. *Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2nd Cir. 2002); *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 569 (3d Cir. 2002); *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 861 (8th Cir. 2006); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005). Maintaining social relationships is also a recognized major life activity under the ADA. *McKay v. Town and Country Cadillac, Inc.*, 97 C 2102, 2002 WL 1285065, at *5 (N.D. Ill. June 7, 2002). The facts in this case set forth clear evidence that Budde¢s alcoholism substantially affected each of these major life activities.

Budde¢s affidavit clearly sets forth long term pervasive effects from his alcoholism. SAUF ¶¶11-21. For 43 years, until June 1, 2005, Budde came home *every day* from work, sat in his chair in front of his television and drank alcohol until he passed out. He drank until he passed out on weekends as well. SAUF ¶11. During this time he had difficulty sleeping. SAUF ¶14. He was unable to assist in caring for his children. SAUF ¶14. He often would argue with his wife and children. SAUF ¶14. He ranted and raved and carried on. SAUF ¶14. His memory was affected and he would often forget things. SAUF ¶14. His sexual relationship with his wife was affected. SAUF ¶14. He and his wife eventually divorced as a result of his drinking. SAUF ¶14. The only evenings and weekends he did not consume alcohol alone at home in front of the television until he passed out were the times he would go out and drink at social functions and local establishments. SAUF ¶13. At those times, he would drink so much that he had to get rides home from his friends, such as Brick Van Der Snick. SAUF ¶13. He suffered from blackouts ó where he would be drinking to the point where he ölost timeö and could not recall where he had been or what he had been doing. SAUF ¶12. This happened almost weekly. SAUF ¶12.

After his divorce in 1998 Budde continued to drink himself into a stupor until he passed out virtually every night and on weekends. SAUF ¶15. After his divorce, he was unable to take care of himself and his home and was forced to hire a maid service to keep his house clean. SAUF ¶15. His friendships were affected because of his drinking. SAUF ¶19. He became angry at his friends whenever they suggested that he had a drinking problem. SAUF ¶19. For instance, in May 2005, Budde became angry at his friends, including Brick Van Der Snick Jim Martin,

when they came to his house and tried to convince him that he needed to seek treatment. SAUF ¶19.

Budde's description of the affects of his alcoholism on his major life activities is supported by other witnesses. As part of Budde's rehabilitation at Central DuPage Hospital, and prior to his termination, Budde's family members wrote him letters describing the effects of Budde's alcoholism on their family. SAUF ¶20. Budde's ex wife, Diane, wrote Budde a letter on June 5, 2005. In the letter she describes the substantial effect that Budde's drinking had on his relationships with her and their children. SAUF ¶20. At the same time, Budde's daughters Megan and Maureen, wrote a letter to Budde, detailing how Budde's alcoholism affected his relationship with them. Affidavit of Meghan Budde and letter attached as SAUF ¶20.

Other witnesses confirm the substantial effect that Budde's alcoholism had on his major life activities. Dr. Patrick Allan, Program Manager for the alcohol/drug program of Central DuPage Hospital, testified that Budde's alcoholism affected his ability to care for himself. SAUF ¶16. Dr. Melvin Hess, an M.D. with a specialty and board certification in psychiatry and practicing at the Central DuPage Hospital, testified that Budde had demonstrated problems regarding concentration on his mental status test. SAUF ¶17. Brick Van Der Snick identified several incidents where Budde was unable to care for himself because of his alcoholism as he was unable to drive himself home. SAUF ¶18. Van Der Snick also testified that Budde's alcoholism was affecting his friendship with Budde as well as Budde's personal life and his relationships with his friends and family. SAUF ¶19. Monica Meyers, Executive Director of the Kane County Forest Preserve District, indicated that Budde had previously told her of issues related to his divorce and some issues with his family and that these factors were part of the reason she referred Budde to the EAP program. SAUF ¶20.

In reviewing these factors, the Court should consider how pervasive the effects of Budde's alcoholism were. *See* 29 C.F.R. § 1630.2(j) (a court should look at the effect of an impairment on an individual's life, the severity of the impairment, the duration of the impairment, and the long-term impact of the impairment); *Bilodeau v. Mega Indus.*, 50 F. Supp. 2d 27, 34-35 (D.ME. 1999). As indicated herein, the effects on Budde's life were severe and lasted for many years – through and including his discharge by the Defendant – Budde had just begun the rehabilitation program of Central DuPage Hospital when he was fired on June 7, 2005. SAUF ¶27. The evidence viewed in the light most favorable to Budde demonstrates that his

alcoholism affected his major life activities of caring for himself, concentration and social relationships. Budde has demonstrated that he has a disability under the ADA.

**C.    Defendant perceived Budde to be disabled under the ADA.**

Budde also satisfies the requirements for a disability under the ADA, because Defendant perceived Budde to be an alcoholic and perceived this disability to have an effect on the major life activity of working. As this Court recognized in *Terry v. American Airlines,* No. 02 C 8829, 2004 WL 2211606, at *12-13 (N.D.Ill. Sept. 3, 2004), an employer's perception that an employee's disability affects a major life activity is sufficient to satisfy the requirement of a disability under the ADA.

The District perceived Budde as an alcoholic at least a year before it fired him. In May 2004, Budde was the subject of an Administrative Inquiry by the District concerning his drinking and a complaint by Sergeant Rick Hays that Budde was drinking on the job and having "liquid lunches." SAUF ¶29. In or around February 2005, prior to Budde's March accident, Tracey Smith and Monica Meyers also investigated  whether Budde parked his official vehicle in front of the Moose Lodge, which sold liquor. SAUF ¶¶29-30. These District employees testified that they were concerned about the impression this would create because alcohol was consumed at the Moose Lodge. SAUF ¶29. Tracy Smith also testified that she was concerned about Budde drinking and driving home in his official vehicle. SAUF ¶29.

The evidence also shows that the District perceived Budde's alcoholism as limiting his ability to work – a major life activity under the ADA. *Moore v. J.B. Hunt Transp. Inc.*, 221 F.3d 944, 954 (7th Cir. 2000). Contrary to Defendant's argument in their Memorandum (MSJ Br. p. 6), the issue under perceived disability is not whether *Budde* thought that his alcoholism affected his ability to work. Nor is the issue whether Budde could actually perform any job "under the sun." MSJ Br. p. 6; SUF ¶19. As in *Terry*, 2004 WL 2211606, at *12-13; and *Sullivan v. Neiman Marcus Group, Inc.,* 358 F.3d 110 (1st Cir. 2004), Budde admits his alcoholism but does not contend that his alcoholism affects the major life activity of working.[2] This is irrelevant, however, as the proper question is whether the District perceived Budde's alcoholism as substantially limiting his ability to work. In *Zakaras v.United Airlines, Inc.,* 121 F. Supp. 2d 1196, 1217 (N.D. Ill. 2000) (citing *Cline v. Wal-Mart Stores, Inc*., 144 F.3d 294 (4th Cir. 1998)),

---

[2]    As set forth in Section I(B), Budde has demonstrated that his alcoholism affects his major life activities of concentration, ability to care for himself and social and personal relationships.

the Court determined that a plaintiff could satisfy the requirement that an employer considered the major life activity of working to be substantially impaired because it considered him unable to take supervisory positions. Similarly, Defendant here, through its termination letter, has taken the position that Budde is not capable of performing work requiring judgment – a broad class of jobs which satisfies the requirements of perceived disability under the ADA. SAUF ¶31.

The District has explicitly stated its view that Budde's actions demonstrated lack of judgment. SAUF ¶31. John Hoscheit, was the President of the District's Board of Commissioners, and in that capacity, also served as the President of the Kane County Forest District in which the authority to dismiss an employee is vested, among other things. SAUF ¶33. President Hoscheit also had authority to delegate the decision to terminate employees to a Division Director. SAUF ¶33. President Hoscheit admitted that even when he delegated his authority, he had input into the decisions to fire personnel. SAUF ¶33. The District asserts this authority based on the incidents referenced in Budde's termination letter: 1) a 1998 incident in which Budde is alleged to have arranged a party where alcohol was served on District facilities; 2) an alleged unauthorized contact by Budde with his subordinate Rick Hays, a Sergeant who claimed the Budde was drinking on the job and having liquid lunches; 3) the February 2005 occasions on which Budde's District vehicle was seen parked at the Moose Lodge; and 4) the March 2005 car accident involving alcohol. SAUF ¶34. Each of the incidents on which the District relies to assert Budde lacked judgment involved Budde's alleged use/abuse of alcohol and are incidents which in combination meet the definition of alcoholism set forth in the AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994), because they meet at least three of the items: items 5, 6, and 7 listed in the DSM criteria. Fn. 1, *supra.* These incidents are the basis of the District's perception that Budde's judgment was affected, which Defendant's explicitly considered as affecting his ability to work in law enforcement. SAUF ¶34.[3] Defendant's perception that Budde lacked judgment is enough to satisfy the requirement that Defendant considered Budde as incapable of working in a broad class of jobs based on his disability.

---

[3]       It should be noted that the District's perception is based on instances involving Budde's consumption of alcohol outside the workplace. As set forth herein, the Right to Privacy in the Workplace Act, 820 ILCS 55/1, et seq., makes it "unlawful for an employer to refuse to hire or to discharge any individual, or otherwise disadvantage any individual, with respect to compensation, terms, conditions or privileges of employment because the individual uses lawful products off the premises of the employer during nonworking hours."

### D.    Budde can perform the essential functions of his job

Defendant argues that Budde could not perform two essential functions of the job of police chief, driving a car and following workplace rules.  MSJ Br. p. 7.  Neither argument is supported by the record.

### 1.    Budde was able to perform the only essential job function related to "driving a car" listed in the applicable job description for Chief of Police – that is "operate a motor vehicle."

Defendant incorrectly conflates two separate concepts into "driving a car," namely the ability to operate an automobile and having a valid drivers license. MSJ Br. pp. 2, 3, 7. In doing so, Defendant relies wholly on job descriptions for the position of Chief of Police, as well as untimely, inadmissible, and irrelevant job descriptions for Director of Public Safety.   Defendant argues that the 1992 job description for Chief of Police requires Budde to have a valid driver's license.  The 1992 job description does not impose that requirement in any place, let alone as an essential function of the position Budde held, the Chief of Police.  Rather, the 1992 job description lists the ability to "operate an automobile" as an essential function. SAUF ¶4. Defendant has not cited any evidence to support the contention that the Forest Preserve District's 1992 provision that the Chief be able to operate an automobile included a requirement that the Chief of Police possess a "valid driver's license," nor a "valid driver's license without record of suspension or revocation." Instead, Defendant misquotes the Illinois Drivers Licensing Law (MSJ Br. p. 7), which expressly limits the license requirement to "driv[ing] any motor vehicle *upon a highway in this State* unless such person has a valid license or permit."  625 ILCS 5/6-101(a).   In contrast to Defendant's unsupported allegation, Budde, who drafted the job description, testified that "operate an automobile" meant having the ability to, or knowledge of how to, operate an automobile – not having a valid driver's license. SAUF ¶4.  Budde gave the example of operating an automobile not on a public highway as an illustration of the ability to operate an automobile. SAUF ¶4.  This distinction is entirely in accord with the Illinois Drivers Licensing law and Forest Preserve policy.

 In fact, Budde's definition of "operate an automobile" is the one used in practice by the District, which has employed a person who did not have a valid driver's license to operate a motor vehicle on Park District property.  Jim Burbridge, was an employee who Defendant hired to be the site manager for the largest Forest Preserve facility.  SAUF ¶¶4, 8. Mr. Burbridge had a

8

DUI record on his license and his license was suspended while he was a Forest Preserve District employee. SAUF ¶8. Moreover, the Defendant continued to employ Mr. Burbridge despite this restriction on his license, for a position which required that he operate a truck to drive and supervise Forest Preserve property and personnel. SAUF ¶8.

The Defendant also argues, without evidentiary foundation, that Budde was required to have a valid driver's license without record of suspension. (MSJ Br. p. 2, 3, 7). In order to create the impression that there was such a requirement, Defendant purports to cite to Exhibit 2 from Budde's deposition, which is a job description for "Chief of Police." SAUF ¶4. Defendant, however, did not quote from Exhibit 2, but rather quoted from a different job description. SUF ¶3; SAUF ¶¶4-5. The job description quoted by Defendant is entitled as a description for Director of Public Safety. There are two such job descriptions in the record. SAUF ¶5. One is explicitly dated April 12, 2005 on page 4 – a date after Budde was placed on Administrative Leave, March 17, 2005 and after his car accident.[4] SAUF ¶5. The copy of the other job description is undated but substantially similar to the April 2005 job description with the exception of the compensation to be paid. SAUF ¶5.

As Defendant cannot lay a foundation that either of these job descriptions were in effect at the time Budde was employed and the weight of the credible evidence demonstrates that they were not in effect during the time Budde was employed but, rather, created after Budde was placed on administrative leave. SAUF ¶5. Neither job description is therefore relevant to the instant matter, and Defendant cannot rely on these descriptions in a motion for summary judgment. *See Woods v. City of Chi.*, 234 F.3d 979, 987 (7th Cir. 2000)(citing *Aguilera v. Cook County Police & Corrs. Merit Bd.*, 760 F.2d 844, 849 (7th Cir.1985) (stating that in deciding whether to grant a motion for summary judgment a court may consider anything that would be *admissible at trial*). In this case, District employee, Monica Meyers, the Executive Director, testified that she assigned Tracey Smith, head of Human Resources, to revise job descriptions for the purpose of making sure the ranges of compensation were accurate in the job descriptions. SAUF ¶6. However, neither Monica Meyers nor Tracey Smith were able to recall how the different job descriptions occurred and in what sequence . SAUF ¶6. Consequently, the court

---

[4] The date of July 14, 2005 that appears on Budde Dep. Ex. 4, a date Plaintiff Budde placed on the document. The document was first handed to him by John Hoscheit at Budde's Grievance Hearing on that date. Prior to then, Budde had never seen it. " SAUF ¶ 5 (Affidavit ¶ 53).

should reject Defendant's argument that having a license without record of suspension is an essential function of the job of Chief of Police.

### 2. The undisputed facts demonstrate driving a car to and from work or in response to calls were not essential functions of the job of chief of police.

The Court should further reject the argument that driving a car is an essential function of the job of police chief (MSJ Br. p. 2, 4, 7) based on undisputed facts regarding the day to day nature of Budde's duties. Contrary to Defendant's contention, there is no "essential function" that requires the Chief of Police to drive. Moreover, as those job descriptions that Budde contends are inadmissible, the District's sole support for its contention that driving was an essential function of Budde's job is its citation to a job description. However, a job description is not dispositive of the issue of whether something is an essential job function. To determine whether a job function is essential, a number of factors must be considered, including written job descriptions, the amount of time spent on the function, the consequences of not requiring the function, and the work experiences of those performing the job. 29 C.F.R. § 1630.2; *Basith v. Cook County,* 241 F.3d 919, 927 (7th Cir. 2001). The Seventh Circuit looks "to see if the employer actually requires all employees in a particular position to perform the allegedly essential function." *DePaoli v. Abbott Labs.,* 140 F.3d 668, 674 (7th Cir. 1998).

In fact, driving was not actually an essential function of the position of Chief of Police. The position of Chief of Police was mostly administrative. SAUF ¶1. The dispatch office of the Kane County Sheriff's Office routed all emergency calls for Kane County including the Forest Preserve District. Those calls were responded to depending upon what police unit, whether a Forest Preserve unit on duty, a Kane County sheriff on duty that was close by or closer and available, or a member of local police unit for a city or village within Kane County and nearby the incident pursuant to mutual aid and intergovernmental agreements in place during Budde's tenure as well as presently. SAUF ¶2. On the few occasions when the Chief would leave his office in the course of duties, he would often be accompanied by another officer. SAUF ¶1.

To the extent that the Court determines that there is a question of fact regarding the driving requirement, the standard for summary judgment requires this Court to infer in favor of Budde. *Bennington,* 275 F.3d at 658. In contrast to the instant case, *DeSpears* , which is cited and relied on by Defendant, involved a situation where the regulations in place affecting the

plaintiff's job classification required a valid driver's license and the work involved occasional driving. *DeSpears*, 65 F.3rd at 635. At the summary judgment stage, the Court noted that "at this stage in the proceeding we must accept, that driving was not an essential part of his job as a maintenance worker." *Id.* at 636. In this case, given undisputed facts that driving was only a minor part of the role of Chief of Police, the job description in place during Budde's tenure with the District did not require driving and did not require a "valid Illinois driver's license without record of suspension or revocation," and the lack of admissible evidence that the job description applicable to Budde required a valid driver's license the question of essential function is, at the very least, a question of fact for the jury. Consequently, Defendant cannot show as a matter of law that Budde was unable to perform the essential functions of the position.

### E. Defendant cannot show as a matter of undisputed fact that Budde was not terminated because of his alcoholism rather than for the DUI.

In making the argument that Budde was not terminated because of his alcoholism, but rather for not following workplace standards, Defendant relies on a Standard Operating Procedure that violates Illinois law, misstates the Seventh Circuit's holding in *DeSpears* and ignores the facts of this case.

Defendant's argument that Budde violated workplace standards is without merit. In its Memorandum, Defendant argues that Budde violated the General Order 91-07, Section 1.5.2.3. "being intoxicated in public while off duty." SUF ¶4. The numbering system indicates that the Order was prepared in 1991. See, e.g., SAUF ¶3 (regarding job description for Chief of Police indicating numbering system corresponds to year). However, the Right to Privacy in the Workplace Act, effective July 1, 1992, made it "unlawful for an employer to refuse to hire or to discharge any individual, or otherwise disadvantage any individual, with respect to compensation, terms, conditions or privileges of employment because the individual uses lawful products off the premises of the employer during nonworking hours." 820 ILCS 55/1, et seq. In the instant case, Budde was not driving the district's car but his personal car, was not working at the time of his accident and was drinking and driving after hours. SAUF ¶30. Consequently, Defendant cannot rely on Section 1.5.2.3 of the SOP as an enforceable workplace standard.

Further, Defendant mischaracterizes the case of *Despears v. City of Milwaukee.*[5] The Seventh Circuit in *Pernice v. City of Chicago,* clarified its holding in *Despears* as follows:

> Two of our sister circuits have criticized *Despears*, both reading that case as affirming summary judgment for the employer because the plaintiff's alcoholism was a partial cause, but not the sole cause, of his demotion. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 n. 7 (4th Cir.1999); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir.1996). Such a reading of *Despears* puts it at odds with a host of decisions holding that the ADA prohibits employment discrimination if a covered disability is one motivating factor, even if not necessarily the sole cause, of the adverse employment action. But these cases misread *Despears,* which holds only that the plaintiff's alcoholism was a partial cause of his drunk driving incident, **but that his drunk driving incident was the sole cause of his demotion.** 63 F.3d at 636-37.

*Pernice v. City of Chicago*, 237 F.3d 783, 786 (7th Cir. 2001) (note 3) (emphasis added). Consequently *Despears* would only be controlling in this case if Defendant discharged Budde solely because of a DUI. This is not the case herein.

The instant situation is markedly different from *DeSpears*. Budde, unlike the Plaintiff in *DeSpears,* was not terminated solely because of a DUI conviction. In fact, Monica Meyers admits that at the time of Budde's termination **he had not been convicted of a DUI**. SAUF ¶32. Rather, Meyers indicated that her termination was based in part on her "belief" that Budde was drinking and driving. SAUF ¶32. Additionally, Defendant's termination letter does not even mention the DUI as a reason for termination. SAUF ¶32. The termination letter lists "a pattern of errors in judgment, your inability to perform your duties as Director of Public Safety due to suspension of your driving privileges and engaging in conduct that is below the standard for this position." SAUF ¶32. In order to set out a claim under the ADA, the alleged disability need not be the employer's only reason for termination. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033 (7th Cir. 1999); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir.1980). The requirement that the disability be a substantial or motivating factor is met if it makes "a difference in the outcome of events that it can fairly be characterized as the catalyst which prompted the employer to take the adverse employment action, and a factor without which the employer would not have acted." *Foster* at 1034. (citing *Luciano v. Olsten Corp.*, 110 F.3d 210, 219 (2nd Cir.1997)).

---

[5]     Defendant also relies in this section on *Arbogast v. Alcoa Building Products,* 165 F.3d 31 (7th Cir. 1998). However this is a unpublished order "not to be cited except to support a claim of preclusion or to establish the law of the case from an earlier appeal in the same proceeding" per Seventh Circuit Rule 32.1 and therefore cannot have any legal or precedential effect in this case.

Given Meyers' admission and the explicit wording of the termination letter, it is apparent that the DUI was not the only reason for termination. Considering the list of factors set forth by the Defendant in the termination letter, all of which relate to Budde's relationship with alcohol, the length of time between Budde's car accident – March 11 – and the termination letter – June 7, and that Budde was placed on Administrative Leave Defendant's position and reliance on *DeSpears* is unsupported as a matter of fact and law and, at a minimum, present a question of fact as to whether Budde's alcoholism was a substantial motivating factor in his termination,

## II. Summary judgment should be denied on Budde's ADA discrimination claim.

### A. Budde has set forth evidence of discrimination under the indirect burden shifting method of proof.

To make a prima facie case of disability discrimination at the summary judgment phase, a plaintiff must offer evidence that: 1) he is disabled within the meaning of the ADA; 2) he was meeting his employer's legitimate employment expectations; 3) he was subject to an adverse employment action; and 4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC,* 410 F.3d 376, 380-81 (7th Cir. 2005). As set forth in Argument I(A) and I(B), *supra*, Budde is disabled and was perceived to be disabled by the Defendant within the meaning of the ADA. As set forth in Argument I(C) above, Budde was able to perform the essential functions of the position of police chief with or without accommodation. There is no dispute that Defendant's termination of Budde constitutes adverse employment action. Defendants contend however, that Budde is unable to point to similarly situated individuals who were treated differently that Budde.

Defendant's contention is incorrect. Defendant has employed at least two other individuals with records of DUIs. The first, Katie Ottum (Parkhurst) was hired by the Defendant while her driver's license was suspended for a DUI. The Defendant allowed Ms. Ottum (Parkhurst) to be driven to work by her parents until the suspension was over. SAUF ¶7. The second, James Burbridge, was another employee of the Defendant who was hired to be the site manager for the largest Forest Preserve facility. SAUF ¶8. Mr. Burbridge received a DUI during his employment with the Forest Preserve District where he drove a truck on Preserve District property supervising his employees and the District's property. SAUF ¶8 Defendant did not fire Burbridge despite the suspension of his Illinois Driver's license and record of suspension. SAUF ¶8. As a further accommodation, the District purchased a truck to allow Mr.

Burbridge, who was missing an arm, to drive with one arm. SAUF ¶8. These two examples of similarly situated individuals demonstrate that the Forest Preserve District's decision to terminate Budde was discriminatory.

### B. Budde has also set forth direct evidence of discrimination

Defendant has not addressed Budde's direct evidence of discrimination based on Defendant's pretextual reasons for firing Budde. "A finding of pretext can complete the prima facie case under *McDonnell Douglas*, but it can also be independent evidence of discrimination." *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007). In this matter Budde has set forth ample evidence to demonstrate that the District constructed a pretext for discrimination though its belated modifications to his job description in an attempt to create the impression that driving and having a valid drivers license without record of suspension were essential functions of Plaintiff's job. Indeed, the District's intent on this is clearly revealed by the fact that Budde had never seen what are the job descriptions labeled Budde Dep. Exs. 3 and 4 until July 14, 2005, more than one month after his termination, when John Hoscheit handed Budde Budde Dep. Ex. 4 at Budde's hearing grieving his termination. SAUF ¶5. Additionally, the Defendant has claimed that a pattern of errors in judgment justify Budde's termination. However, on December 13, 2004, Budde received performance appraisal for the period of June 2004 to December 2004 from Monica Meyers. SAUF ¶35. This appraisal evaluated Budde's performance overall as 4.11, exceptional. SAUF ¶35. Nowhere in the performance appraisal was there mention of alleged poor judgment for any of the incidents that had purportedly occurred prior to that performance appraisal and were cited by the District in the termination letter of June 7, 2005. SAUF ¶35. In combination, the District's proffered hollow explanations are a pretext which constitutes proof of discrimination.

## III. Summary judgment should be denied on the ADA accommodation claim.

### A. Accommodation is required for both actual and perceived disabilities.

Under the ADA, an employer engages in discrimination when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee [with a disability], unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."[6] *US Airways, Inc. v. Barnett*, 535 U.S.

---

[6] Defendant has not raised an "undue hardship" argument in its Motion for Summary Judgment regarding any accommodation for Budde's alcoholism. To the extent that Defendants claim hardship defined as, "an action

391, 396 (2002). The employer has the responsibility to make a reasonable effort to determine an appropriate accommodation. *Beck v. University Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Defendant does not dispute that the reasonable accommodation requirement applies to employees with actual disabilities. Defendant mistakenly claims, as a matter of law, that an employer does not have to provide a reasonable accommodation for a perceived disability. (MSJ Br., p. 5).

The cases that Defendant cites for this authority do not support that an employer is not required to accommodate a perceived disability. In *Terry*, the court did not hold that an employer need not accommodate a perceived disability. The court did say that at least one Court of Appeals has declined to hold that an employer must reasonably accommodate a perceived disability, however, it did not decide the issue for the Seventh Circuit. *Terry v. American Airlines Inc.,* No. 02 C 8829, 2004 WL 2211606, at *13 (N.D. Ill. 2004). The reason that the court granted summary judgment in the *Terry* case was not that the employer had no obligation to accommodate the plaintiff, but, rather, the plaintiff's reasonable accommodation claim was barred because he did not raise it in his EEOC charge, nor did he ever request an accommodation. *Id*. Moreover, the Third Circuit case that Defendant cites actually holds that the plain language of the ADA requires employers to provide reasonable accommodations for employees with perceived disabilities. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 772-76 (3rd Cir. 2004); *see also D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1235 (11th Cir. 2005).

Rather than being a matter of law, there is a circuit split as to whether an employer must accommodate a perceived disability, and the Seventh Circuit has not yet directly addressed the issue. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004); *Williams,* 380 F.3d at 773. In *Cigan*, for example, the court did not decide how the Seventh Circuit would rule on this conflict because there was not sufficient evidence to conclude that the defendant perceived

---

requiring significant difficulty or expense.ö 42 U.S.C. § 12111(10)(A), it is their burden to prove such. *Vande Zande,v. State Of Wisconsin, Dept Of Admin.*, 44 F3d 538, 543 (7th Cir. 1995). In any event, the facts in the instant case do not support such an argument. To the extent that the District has raised or seeks to argue that Budde's proposed accommodations were an undue hardship to the District and therefore it could not accommodate Budde, this argument begs the question. First, at no time did the District say this. Second, at no time did the District proffer an alternate suggestion. Third, any argument by the district that Budde's lack of a driver's license and the size of the District is not supported by the evidence and at a minimum is a question of fact in light of the manner in which the District operated, the fact that the Sheriff's Police took and routed all emergency calls for Kane County, in light of the cooperation agreements in place for responding to those calls, and, finally, in light of the rare occasions on which Budde did respond to calls as the Chief of Police.

the plaintiff as disabled. *Cigan,* 388 F.3d at 335. The court did note, however, that being perceived as disabled is one type of disability under the ADA and thus, a perceived disability could conceivably require a reasonable accommodation. *Id.* The court did not determine what, if any, accommodations would be necessary for a perceived disability, but left the issue to be decided in the future. *Id.* at 335-36.

The First, Third, Tenth, and Eleventh Circuits, on the other hand, have directly addressed this issue and all agree that the ADA requires employers to accommodate a perceived disability. *D'Angelo,* 422 F.3d 1239; *Kelly v. Metallics West, Inc.*, 410 F.3d 670, 675-76 (10th Cir. 2005); *Williams*, 380 F.3d at 774; *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 33 (1st Cir. 1996). The Eleventh Circuit, for example, reasoned that the ADA prohibits disability-based discrimination against a disabled individual who can perform essential job functions with or without a reasonable accommodation. *D'Angelo*, 422 F.3d at 1235. A disability, pursuant to the ADA, can be either an actual disability *or* a perceived disability. *Id. D'Angelo* held that the text of the ADA provides no reason to differentiate between an actual or perceived disability when determining whether an employer must provide a reasonable accommodation. *Id.* at 1236. Further, this straightforward reading of the ADA is consistent with the way the Supreme Court has interpreted a virtually identical provision of the Rehabilitation Act of 1973. *Id.*; *School Bd. Of Nassau County v. Arline,* 480 U.S. 273, 288-289 (1987). Other Circuit Courts have made similar arguments to that of the Eleventh Circuit based on the plain language of the ADA. *Williams*, 380 F.3d at 774-76. Based on the sound reasoning of sister Circuits that have addressed the issue, Defendant should have provided Budde with a reasonable accommodation whether he had an actual or perceived disability.

**B.    The District refused to provide Budde with a reasonable accommodation.**

Despite the fact that Budde had both an actual and perceived disability that the District knew of (*See* Argument I(A) and I(B)), and he requested reasonable accommodations, the District failed to provide him with any accommodation. Instead, the District fired Budde prior to his DUI conviction and during his rehabilitation program at Central DuPage Hospital. SAUF ¶¶27, 32. Defendant's wholesale refusal to engage in the requisite interactive process regarding Budde's request for accommodation does not meet the standards required of employers under the ADA.

16

As an initial matter, Defendant claims that Budde did not request an accommodation until three days after his termination. SUF ¶16. This contention ignores the evidence and the law. First, an accommodation can be requested and negotiated by the disabled person's attorney. *See, e.g. DePaoli* 140 F.3d at 670; *Harter v. University of Indianapolis,* 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998) (finding it is "common" to use attorney as agent in negotiation of reasonable accommodation). Budde testified that he spoke with Monica Meyers on March 15, 2005, told her that he needed help and that he needed to speak with someone in reference to an alcohol problem. SAUF¶23. In response, Meyers suggested he speak to Tracy Smith regarding the EAP program. SAUF ¶23. Budde followed up with Tracy Smith on the same day. SAUF ¶34. On March 16, Budde inquired of Tracey Smith if she had the telephone number and name for the EAP program and was told no. On March 17, Tracey Smith provided Budde with the name and number of Guy Oberwise of the Renz Addiction Center, the EAP program utilized by the District. Budde then set up meetings with the EAP representative Guy Oberwiess, starting on March 22, the week after March 15. SAUF ¶24. Additionally Budde sought treatment first through RENZ and subsequently through Central DuPage Hospital after he was placed on administrative leave. SAUF ¶25. The Defendant knew Budde was seeking treatment for alcoholism as Budde contacted Tracy Smith on March 22, 2005, and advised Smith that he had his EAP evaluation. SAUF¶26. On or about May 31, 2005, Budde also advised Tracy Smith by voicemail that he had entered Central DuPage Hospital's rehab program. SAUF ¶26. Nonetheless they terminated him during his treatment. SAUF ¶27.

Defendant wholly failed to engage in the interactive process regarding Budde's need for accommodation regarding his alcoholism. When Budde's attorney, Brick Van Der Snick, raised the idea of an accommodation with the Forest Preserve, his question was ignored. SAUF ¶28. Defendant neglected to comment on the reasonableness of any accommodation or whether it would be willing to discuss an accommodation. SAUF ¶28. *Beck* states that ADA regulations envision a process in which both parties participate to determine an appropriate reasonable accommodation. *Beck,* 75 F.3d at 1135. Where, as here, an employer has a duty to provide a reasonable accommodation because the employee has made the employer aware of his disability, the employer *must* engage in this interactive process. *Haschmann v. Time Warner Entm't Co.,* 151 F.3d 591, 601 (7th Cir. 1998). Participation by both the employer and employee is required. *Beck*, 75 F.3d at 1135. Rather than participate in this process, the Defendant fired Budde while

he was on leave and seeking treatment for his alcoholism. By failing to even comment on the accommodations that Budde requested, Defendant failed to engage in the interactive process and refused to provide Budde with a reasonable accommodation.

Moreover, accommodating Budde with a temporary leave of absence to seek treatment for his alcoholism would have been a reasonable accommodation under the ADA. The Seventh Circuit has held that a temporary leave of absence to seek medical treatment is a reasonable accommodation under the ADA. *Haschmann,,* 151 F.3d at 601. Other courts have held that the ADA may require an employer to accommodate an alcoholic employee with a leave of absence to seek treatment for his alcoholism, just as the employer would accommodate an employee with another illness. *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 996 (D. Or. 1994). In the instant case, in addition to proposing a sixth month leave of absence unpaid, the District's benefit program provided short term disability benefits for a 6 month period. Despite the fact that Budde informed Defendant of his need for treatment, Defendant failed to discuss any accommodation and chose to terminate Budde while he was seeking necessary treatment. Defendant's actions in failing to engage in the interactive accommodation process, and failing to accommodate Budde while he was seeking treatment for his alcoholism, is sufficient to avoid summary judgment on the accommodation claim.

To the extent that Defendant's raise the issue of whether providing Budde with a driver or allowing him to ride to work with his family and friends is a reasonable accommodation, the argument is a red herring. As previously set forth, Budde was not required in the course of his ordinary duties to drive to or to respond to calls. He did state that he could get to and from work with family and friends, but did not propose an accommodation from the District to allow him to have driver at work. He suggested that, when he needed a ride to get to work, he could have a friend or his DUI attorney drive him. SAUF ¶28. As solutions to issues raised by the District, Budde's attorney did propose that if it became necessary for Budde to drive in the course of his duties, he should be allowed the accommodation of either riding with one of the other officers or using his accumulated leave to coincide with the suspension of his license. SAUF ¶28. However these issues were false obstacles raised by the Defendant and were also irrelevant as Budde was fired while he was seeking treatment for his alcoholism.[7]

---

[7]     Again in this Section Defendant relies wholly on *Arbogast v. Alcoa Building Products,* 165 F.3d 31 (7th Cir. 1998) in violation of Seventh Circuit Rule 32.1.

IV.     **Summary judgment should be denied on the ADA retaliatory discharge claim.**

In its motion for summary judgment, Defendant failed to discuss Budde's claim for retaliatory discharge.  *See* Complaint ¶8.  Under the ADA, it is unlawful for an employer to retaliate against an employee for seeking a statutorily protected activity.  "A plaintiff succeeds in establishing unlawful retaliation under the direct method by presenting evidence of: 1) a statutorily protected activity; 2) an adverse action; and 3) a causal connection between the two." *Squibb v. Memorial Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).

A.     **Seeking an accommodation is a statutorily protected activity.**

As discussed in Section III(B), Budde requested an accommodation from Monica Meyers on March 15, 2005, when he requested to speak with someone in reference to his alcohol problem.  SAUF ¶23.  The ADA protects from interference with an individual's exercise of any right under the ADA.  42 U.S.C. 12203(b); *Silk v. City of Chicago*, 194 F.3d 788  (7th Cir. 1999).  Seeking an accommodation for a recognized disability is a statutorily protected activity.  *Id*., at 801; *see also Freadman v. Metropolitan Property and Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007) (holding that "requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision"  As discussed in detail previously, Budde sought an accommodation for his disability.

B.     **Budde's termination is an adverse employment action.**

There can be no question that termination is an adverse employment action.  "Termination certainly qualifies as an adverse employment action." *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).  Budde suffered an adverse employment action when he was terminated Budde on was terminated on June 7, 2005. SAUF ¶27.

C.     **Defendant's termination of Budde was connected to his request for an accommodation.**

A causal connection is established between a statutorily protected activity and an adverse employment action when "the protected activity and the adverse action were not wholly unrelated." *Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1015 (7th Cir. 1997).  The timing between Budde's request for an accommodation and his termination is sufficient to establish a causal connection.  "Suspicious timing does constitute circumstantial, or indirect, evidence to support a claim of discrimination" *Id*., at 1015 (citing *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (holding "circumstantial

evidence is admissible to provide a basis for drawing an inference of intentional discrimination")). The timing of Budde's request for an accommodation and his termination establish a causal connection.

Budde requested an accommodation in the form of seeking information regarding the Forest Preserve District's EAP from Monica Myers when he unsuccessfully tried to contact her on March 14, 2005 and successfully did contact her for the same purpose on March 15, 2005. SAUF ¶23. On March 17, 2005, Budde contacted Guy Oberwise of the defendant's EAP program. SAUF ¶24. On or about March 22, 2005, Budde began his treatment for alcoholism with Renz Addiction Center. SAUF ¶24. In addition, on May 31, 2005, Budde was admitted into the Central DuPage Hospital's Behavioral Services alcohol rehabilitation partial day program, began treatment on June 1 and attended that program daily until June 21, 2005. SAUF ¶25. Budde was discharged from RENZ on August 16, 2005. SAUF ¶25. While in the midst of his recovery treatment, Budde was terminated on June 7, 2005. SAUF ¶27.

"A plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity." *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) (holding that discharge of plaintiff four weeks after the protected activity was sufficient to support the "the inference of a causal link"). Defendant did not even provide Budde the opportunity to return from completing his treatment. Defendant's termination of Budde **during** the course of his requested accommodation demonstrates a causal connection. Budde has set forth sufficient facts to avoid summary judgment on the retaliation claim based upon Defendant's termination after Budde's request for an accommodation and while he was seeking treatment for his alcoholism.

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiff Charles Budde requests this Court deny Defendant's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,

PLAINTIFF CHARLES BUDDE
BY: /s/ Susan Bogart
    Law Offices of Susan Bogart
    30 North LaSalle St., Ste. 2900
    Chicago, IL 60602
    (312) 263-0900 ext. 7014
    SBogart514@aol.com